**United States District Court**

For the Northern District of California

1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   ELAINE L CHAO, Secretary of          No   C 06-4668 VRW
     Labor, US Department of Labor,
12                                         ORDER
             Plaintiff,
13
             v
14
     LOCAL 10, INTERNATIONAL LONGSHORE
15   AND WAREHOUSE UNION,

16           Defendant.
     _____/
17

18

19           The Secretary of Labor ("Secretary") filed this suit

20   against the Local 10, International Longshore and Warehouse Union

21   ("union") seeking to void a portion of the union's 2005 election.

22   The Secretary claims that union member Trevyn McCoy ("McCoy") was

23   denied the opportunity to run for office because the union applied

24   a candidacy requirement that did not appear in the union's

25   constitution, bylaws or rules.  The key facts are undisputed, and

26   the parties cross-moved for summary judgment.  For the reasons that

27   follow, the court GRANTS plaintiff's motion.

28

I

In 1959, Congress passed the Labor-Management Reporting and Disclosure Act ("LMRDA"), which addressed "corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct * * *." 29 USC § 401(b).  "The legislative history indicates that the purpose of Title IV of the LMRDA is to provide free and democratic elections. Further, as the Secretary notes, an underlying concern was preserving public confidence in the integrity of elections. The countervailing policy recognizes that unions should be free to conduct their affairs so far as possible and the government should not become excessively involved in union politics." <u>Reich v Local 89, Laborers' Intern Union of North America, AFL-CIO</u>, 36 F 3d 1470, 1476 (9th Cir 1994).  Accordingly, the statute lists a broad array of precise requirements.  29 USC § 481.  The Department of Labor also issued regulations to further the statute's goal of ensuring that union officials "adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations * * *." 29 USC § 401(a).  Most relevant to this case, the Department of Labor expanded on the statute's requirement that candidacy requirements in union elections must be reasonable:

> Qualifications for office which may seem reasonable on their face may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way.  An essential element of reasonableness is adequate advance notice to the membership of the precise terms of the requirement.  <u>A qualification which is not part of the constitution and bylaws or other duly enacted rules of the organization may not be the basis for denial of the right to run for</u>

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> **office, unless required by Federal or State law.**
> Qualifications must be specific and objective.  They must
> contain specific standards of eligibility by which any
> member can determine in advance whether or not he is
> qualified to be a candidate.* * *

29 CFR § 452.53 (emphasis added).

Here, plaintiff claims the union violated this regulation when it used an unwritten rule to disqualify McCoy from its election.  The union constitution and bylaws lay out its written rules.  At issue here is Article V, Section 1(c) of the union constitution, which states the requirement that candidates must be a member in "good standing" in order to be eligible to run for election.  Doc #18 Ex 1.  The good standing requirement has two components.  First, according to Article XIII, Section 3, all membership dues must be paid.  Id.  When a union member sends in a dues check, the union office receives the check and the clerk makes a notation on the member's "ledger card" to show that dues have been paid.  Doc #22 at ¶7.  Second, according to Article XIII, Section 3 and Article III, the candidate must attend all union meetings or, in the alternative, must pay a $50 fine for each meeting missed.  Doc #18 Ex 1.  The union does not take attendance at meetings, however.  Instead, each member is given a passbook which must be stamped at each meeting – the stamp proves that the member attended the meeting.  Doc #18 at ¶11.

Because the member has sole possession of his book, and because the union has no other record of meeting attendance, any member who wishes to run for office must somehow communicate to the union the information in his stampbook so that his good standing may be verified.  Doc #18 at ¶¶11-12.  To facilitate this, the

**United States District Court**
For the Northern District of California

union requires candidates to come to the union office between the September and October meetings, show the passbook to the union clerk and, if necessary, pay any fines for missed meetings.  Id at ¶12.  This process is known as "clearing" one's membership book. Id.  When a member clears his book, the union clerk enters a notation to that effect on the member's ledger card, thus verifying the member's good standing.  Doc #18 at ¶13.  The physical act of appearing at the union office and clearing one's book is an unwritten candidacy rule which does not appear in the constitution, bylaws or any duly enacted rule.

                                    II

          McCoy submitted proper nominating petitions to run for the positions of Executive Board member and Trustee in the union's November 2005 primary election.  Doc #18 at ¶14.  His request to run for office was denied, however, because he did not appear at the union office before the October deadline to clear his book. Doc #18 Ex 2.  He had, however, paid all his membership dues and attended all meetings.  Doc #27.  His attendance is not disputed – the union only claims that because McCoy never cleared his book, it had no way of knowing whether it was true.

          Plaintiff offers no explanation for why McCoy did not clear his book.  There is an indication that McCoy was unable or unwilling to take off work to appear at the union office and clear his book, see Doc #23 Ex 1 at 3, but the record is generally unclear on that point.  What is clear is that McCoy ran for election in previous years and on those occasions cleared his book successfully.  Doc #22 at ¶16.  Moreover, approximately fifty

United States District Court
For the Northern District of California

members ran for office in 2005, and McCoy was the only prospective nominee who submitted petitions but failed to clear his book.  Doc #22 at ¶¶16, 21.

          After the union disqualified McCoy, he exhausted union remedies and then filed a complaint with the Secretary of Labor, who then filed this lawsuit under 29 USC § 482(b), which authorizes the Secretary to file a civil lawsuit against a union when probable cause supports the charge that an election violated § 481.

III

          In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v Liberty Lobby, 477 US 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  And the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  See Celotex Corp v Catrett, 477 US 317, 322-23 (1986).  When the moving party has the burden of proof on an issue, the party's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party. Calderone v United States, 799 F2d 254, 258-59 (6th Cir 1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

5

**United States District Court**

For the Northern District of California

In the cross-motions for summary judgment, each party offers straightforward arguments.  Plaintiff makes a formalistic argument, claiming that the physical act of going to the union office and clearing one's book is a new requirement for candidacy that does not appear in the union's constitution, bylaws or rules. Defendant offers three basic responses.  First, defendant argues that book-clearing is only an "administrative" method of "verifying" that candidates are eligible.  Accordingly, book-clearing might be understood as implicit in the good standing requirement, although defendant does not phrase the argument in those terms.  Second, defendant argues that McCoy was on actual notice of the book-clearing requirement because he has cleared his book in previous years before running for office.  Third, the union challenges the proper remedy.  Defendant argues that the court should exercise its equitable powers and decline to order a new election because the intervening election in November 2006 renders any new election pointless.

The court will address first the arguments on the merits and then proceed to a discussion of remedies.

A

1

Although plaintiff's contention might appear overly formalistic, strict adherence to the union constitution helps achieve the LMRDA's goal of fair elections.  Courts consistently hold that union elections are invalid whenever requirements appear in "a text providing ambiguous or nonexistent support for that requirement."  <u>Herman v NY Metro Area Postal Union</u>, 30 F Supp 2d

United States District Court

For the Northern District of California

636, 648 (SDNY 1998); see <u>Dole v Graphic Communic Int'l Union</u>, 722 F Supp 782, 785 (DDC 1989) (voiding election that disqualified bulk-mailed ballots because "[n]either the constitution nor the instructions on the ballots clearly prohibits the mailing of ballots in bulk"); <u>Donovan v CSEA Local Union 1000</u>, 761 F 2d 870, 872, 875 (2d Cir 1985) (voiding election because nominating committee disqualified candidates on "vague and subjective criteria" as to which "[n]either the constitution nor any other document provides guidelines for committee members to use," contrary to LMRDA § 481(e) and 29 CFR § 452.53); <u>Donovan v Local Union No 120, Laborers' Int'l Union</u>, 683 F 2d 1095, 1104 (7th Cir 1982) (voiding election that disqualified candidate under constitutional "competency" requirement because "[t]he term 'competent' is general and ambiguous, and when made a qualification for office does not allow a member to take steps to ensure that he will be eligible"); <u>Martin v Local 101, Transp Workers Union</u>, No CV 91-1871 (RJD), 1992 WL 394175, at *8 (EDNY Dec 9, 1992) (unpublished opinion) (voiding election that disqualified candidate who had been terminated from employment because "the Union can point to no provision in its constitution or bylaws which incorporates the alleged rule. Although the Local asserts that the practice operates to give effect to sections 1 and 9 of its constitution, neither section provides for automatic termination of membership."); see also <u>Dole v Local Union 317</u>, 711 F Supp 577, 581 (MD Ala 1989) (holding that "the union breached this obligation [of fair and democratic elections] by disqualifying voters in the election for failure to comply with technical requirements, while at the same time failing to provide instructions on how to meet

7

such requirements"), citing 29 CFR § 452.110(b).  Here, defendant does not argue that the book-clearing requirement appears unambiguously in any writing distributed to union members. Instead, defendant claims, essentially, that everybody knows about it.  Defendant cites no case suggesting that word-of-mouth is sufficient under the LMRDA and 29 CFR § 452.53, and this court has found none.

The court acknowledges the need to verify that candidates are eligible to run for election.  The court even concedes that verification may be implicit in the requirements that are spelled out in the union rules.  But the more important issue is the union's chosen <u>method</u> of verification.  The key fact in this case is that the union has allocated the burden of verification to the candidates, and it has done so by requiring a separate affirmative act that does not appear in the constitution, bylaws or rules.

The union's "implicit administrative verification" argument might carry more weight if the union verified good standing on its own, without active assistance from the candidate. For example, the union must verify payment of dues, and it allocates that burden to itself – the union clerk looks at its own files to see whether the member has sent in a check.  In that instance, there would be no need to write that procedure into its constitution, bylaws or rules because there is no need for notice. The verification is done internally.  The candidates are not involved.  From the candidate's perspective, the act of sending in his check is also sufficient to prove that he paid his dues.

The opposite occurs when the union verifies meeting attendance.  The union allocates the burden to the candidate

because he must appear before the clerk and offer proof of his good behavior.  Because the union has chosen to issue passbooks rather than simply take attendance at meetings, McCoy's act of attending meetings was not sufficient to prove that he had attended.

The union's general need for verification may be implicit.  But as demonstrated by the differing methods for verifying dues payment and attendance, the allocation of the burden to the candidate is not implicit.  And because it is not implicit, candidates have no way of knowing it unless it is written into the constitution, bylaws or rules.  See 29 CFR § 452.53.  Moreover, if the verification process involves specific deadlines, as here, then that information must be made clear.  See Herman, 30 F Supp 2d at 648, 650 ("[P]artial notice is inadequate, even if it points the way for a member to discover the requirement.* * * The principle here is that the sort of notice the LMRDA requires is more than 'inquiry notice' and more than 'constructive notice' based on custom and practice.").

The court emphasizes that there is nothing wrong with allocating the burden to the candidate.  That may well be practical.  The problem is that the union has not written that burden into its constitution, bylaws or rules.  Perhaps the union did not see the need to do so – from the union's perspective, book-clearing is a natural way to prove eligibility.  But from the perspective of a member like McCoy who has already met the eligibility requirements, book-clearing is an unnecessary and separate affirmative act that he must perform.  To McCoy, it does not matter whether the affirmative act is "go to the union clerk and show your attendance stamps" or "go to the union clerk and hop

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

on one foot." McCoy attended all the meetings and paid all his dues, thus satisfying the constitutional requirements, but the union then requires him to perform a third, unofficial action. There is no reason why the union is permitted to allocate that burden to the union member without first complying with 29 CFR § 452.53. See <u>Herman</u>, 30 F Supp 2d at 650 ("It is the union's affirmative duty to provide its members the information necessary for enjoyment of their LMRDA § 481(e) right to nominate, vote, and run in union elections.").

In some instances, it makes sense that the union member may have an implied, unwritten duty to aid the union in verifying his good standing status. If the union, for example, misplaced the ledger card that proved McCoy had sent in his dues payment, then McCoy might be required to assist the union in obtaining copies of the cancelled checks from his bank. In such a hypothetical case, the union has allocated the burden to itself and has done everything in its power to verify the facts. Here, by contrast, the union knew – because of the verification method it chose – that McCoy would be required in every case to help verify his status. If his participation in that step is assured or unavoidable, then it should appear in the union's rules. If this creates problems for the union, then as plaintiff points out correctly, they are problems of the union's own making.

Lastly, because McCoy did eventually clear his book after the deadline (see Doc #30 at 4 n1), this dispute might have been avoided had the union chosen a less drastic alternative to disqualifying McCoy, such as re-balloting or accepting his candidacy and "issu[ing] regulations clarifying the voting

procedures for future elections." <u>Dole v Graphic Communications</u> <u>Intern Union, AFL-CIO, CLC</u>, 722 F Supp 782, 786 (DDC 1989); <u>Herman</u>, 30 F Supp 2d at 646.

2

On the other hand, this case is unusual because the evidence suggests that McCoy did in fact have notice of the unwritten book-clearing requirement. Perhaps tellingly, plaintiff does not address this issue.

It is arguable that if McCoy had actual notice of the book-clearing requirement, there may be no violation of 29 CFR § 452.53. Again, that regulation states:

> Qualifications for office which may seem reasonable on their face may not be proper if they are applied in an unreasonable manner or if they are not applied in a uniform way. An essential element of reasonableness is adequate advance notice to the membership of the precise terms of the requirement. A qualification which is not part of the constitution and bylaws or other duly enacted rules of the organization may not be the basis for denial of the right to run for office, unless required by Federal or State law. Qualifications must be specific and objective. They must contain specific standards of eligibility by which any member can determine in advance whether or not he is qualified to be a candidate.* * *

29 CFR § 452.53

In context, the purpose of requiring all qualifications to appear in writing is to provide notice. Arguably, if McCoy had actual notice of the book-clearing requirement, then voiding the election in this case would serve no obvious purpose.

That reasoning has two flaws, one factual and one legal. First, the record is not clear that McCoy had actual notice of the

United States District Court
For the Northern District of California

11

book-clearing requirement.  That is usually the problem with unwritten rules.  When the rules are not clear, it is difficult to prove that any given person knows what they are.

Defendant asserts that result can be avoided because unrebutted evidence demonstrates that McCoy cleared his book before running for office in previous elections.  Accordingly, says defendant, McCoy had actual notice of the book-clearing requirement.  Defendant's contention is too speculative for three reasons.  It does not follow that because McCoy cleared his book in previous years, he was aware (1) in 2005; (2) he needed to clear his book; (3) to be eligible to run for office.  First, McCoy might have thought that the union had dropped the book-clearing requirement since he last ran for office.  Second, McCoy might have thought that book-clearing was required only for members who needed to pay any $50 penalties, not for members like him who actually attended all the meetings and had all the stamps.  McCoy fell into the latter category in 2005, but he may have fallen into the former category in previous years.  Third, McCoy may have cleared his book in years past for some purpose other than qualifying for office – he may not have known it was a candidacy requirement.  In each of these three hypothetical scenarios, McCoy did not have precise notice of the specific book-clearing requirement even though he did clear his book in previous years.  Thus the record is not complete enough to conclude whether McCoy had notice.  Again, that is why 29 CFR § 452.53 requires the rules to be written.  Clearly stated rules help avoid exactly this type of ambiguity.

Yet another flaw with defendant's "notice" argument is that it is not sufficiently prospective.  Congress passed the LMRDA

to clean up union elections in general, not merely to redress individual members' grievances.  If the union has violated the LMRDA, then future elections must be conducted properly so that incumbents will not use unwritten rules to abuse and perpetuate their power.  See <u>Wirtz v Local 153, Glass Bottle Blowers Ass'n</u>, 389 US 463, 474 (1968) [hereinafter "<u>Glass Bottle Blowers</u>"] (noting "the extensive congressional inquiry showing how incumbents' use of their inherent advantage over potential rank and file challengers established and perpetuated dynastic control of some unions"), citing S Rep No 1417, 85th Cong, 2d Sess.  Accordingly, McCoy's rights here are not the only consideration.  Even if McCoy actually knew about the precise details of the book-clearing requirement but simply forgot to clear his book, the union's failure to provide clear notice of its election qualifications is cause for concern: "Congress emphatically asserted a vital public interest in assuring free and democratic union elections that transcends the narrower interest of the complaining union member."  <u>Glass Bottle Blowers</u>, 389 US at 475.  The LMRDA and its implementing regulations leave no room for any harmless error analysis.


                                   B

        The final issue is the appropriate remedy.  Under § 482 of the LMRDA, if the court finds a violation of § 481 then "[t]he court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization."  29 USC § 482(c).

                                  13

**United States District Court**
For the Northern District of California

In <u>Glass Bottle Blowers</u>, however, the Supreme Court

cautioned against a literal reading of congressional
labor legislation; such legislation is often the product
of conflict and compromise between strongly held and
opposed views, and its proper construction frequently
requires consideration of its wording against the
background of its legislative history and in the light of
the general objectives Congress sought to achieve. The
LMRDA is no exception.

<u>Glass Bottle Blowers</u>, 389 US at 468 (internal citation and footnote

omitted). Courts frequently hold that the statute is not rigid and

that ordering a new election under the LMRDA is governed by

equitable principles. See <u>McLaughlin v Lodge 647, Intl Bhd of</u>

<u>Boilermakers, Iron Ship Builders, Blacksmiths Forgers and Helpers</u>,

876 F2d 648, 650-51 (8th Cir 1989); <u>Usery v Intl Org of Masters,</u>

<u>Mates, and Pilots</u>, 538 F2d 946, 950 (2d Cir 1976) [hereinafter

"<u>Usery</u>"]. But see <u>Usery v Dist 22, United Mine Workers of Am</u>, 543

F2d 744, 751 (10th Cir 1976) (noting the statutory language but not

considering the possibility of supervising the next regularly

scheduled election). Accordingly the court may fashion a remedy to

fit the practicalities of a particular situation. <u>Usery</u>, 538 F2d

at 950-51. That judges have read seemingly mandatory language to

contain an implied exception granting judges discretion to meet the

necessities of each case is perhaps unsurprising (see Dennis

Jacobs, <u>The Secret Life of Judges</u>, 75 Fordham L Rev 2855 (2007)),

but because the present case is unusual, such relief is just.

The union urges the court not to order a new election

because such an order would not further the purposes of the LMRDA.

Doc #30 at 6. Here, the union asserts, a new election would be

pointless because "the term of office to which McCoy could have

United States District Court
For the Northern District of California

been elected in November 2005 began in January 2006 and ended in January 2007 * * *." Doc #21 at 12. Additionally, the union has since provided its members with written notice of the book-clearing requirement and is in the process of amending its constitution to add it. Doc #30 at 5; Doc #31. The union claims its elections "are among the most democratic in the country" and that "DOL supervision of Local 10's elections would be a waste of taxpayer resources and would represent unnecessary governmental interference into the affairs of the union, a violation of another of the key congressional objectives underlying the LMRDA." Id at 7. Although the union describes this issue as a question of equity, its point is that a new election would be moot.

        Because of the posture of this case, the union's argument survives the Supreme Court's decision in <u>Glass Bottle Blowers</u>. There the court held that an intervening union election does not moot any violations in earlier elections. See <u>Glass Bottle Blowers</u>, 389 US at 472-74. At first glance, <u>Glass Bottle Blowers</u> disposes of the union's argument, but upon closer inspection, the mootness discussion in that case was limited to Article III justiciability. See id at 469 (discussing whether the intervening election "terminate[s] the Secretary's cause of action"); see also <u>Wirtz v Local 153, Glass Bottle Blowers Ass'n of US and Canada, AFL-CIO (GBBA)</u>, 372 F2d 86 (3d Cir 1966) ("[W]e conclude that we have no power to afford the Secretary relief and therefore that these cases are moot.") (quoting <u>Wirtz v Local Unions 410, 410A, 410B, and 410C, Intl Union of Operating Eng'rs</u>, 366 F2d 438, 442 (2d Cir 1966)), rev'd by <u>Glass Bottle Blowers</u>, 389 US at 472-74. This case involves a motion for summary judgment, and this court

United States District Court

For the Northern District of California

properly has jurisdiction.  Accordingly, the Glass Bottle Blowers mootness analysis does not apply.  See McLaughlin, 876 F2d at 653; see also Kupau v Yamamoto, 622 F2d 449, 458 (9th Cir 1980) (dismissing for lack of jurisdiction).  The same is true of any argument that the union's pending constitutional amendments render the case moot.  See Wirtz v Hotel, Motel and Club Empl Union, Local 6, 391 US 492, 500 n9 (1968).  Instead, the court proceeds to weigh the circumstances and decide on a proper remedy.

The Secretary requests that the court void the 2005 election and order the Secretary to supervise a new election.  The union, by contrast, believes the court should exercise its equitable authority and leave the union untouched because a new election would be pointless.  That contention is unsupportable. Courts have declined to order a new election only if unions have conducted an intervening election that was free of the earlier violation (see McLaughlin, 876 F2d 648) or to avoid the unclean hands problem of candidates who - sensing they will lose an election - violate the rules intentionally and then ask the government to rerun the election (see Marshall v Local 1010, United Steelworkers, 664 F2d 144, 151 (7th Cir 1981); Donovan v Local 6, Wash Teachers' Union, 747 F2d 711, 716 (DC Cir 1984)).  Neither circumstance is present here.  Moreover, the pending constitutional amendment does not get the union off the hook - if the union wanted to fix the problem on its own and avoid government intervention, it should have done so during the internal exhaustion period or during negotiations with the Secretary.  Compare Hodgson v Local Union 400, Bakery and Conf WIU of Am, 491 F 2d 1348 (9th Cir 1974).

United States District Court
For the Northern District of California

1    Moreover, <u>Glass Bottle Blowers</u> extolled the virtues of

2  rerunning a void election even if an intervening election has

3  occurred.   The court stressed that the statute vindicates not only

4  the rights of the complaining union member but also the public at

5  large.   <u>Glass Bottle Blowers</u> analyzed in depth the text and history

6  of the LMRDA and articulated two reasons why new elections are

7  preferred.   First, the statute requires complainants to exhaust

8  their remedies within the union and then complain to the Secretary

9  of Labor, who may then file a lawsuit.   <u>Glass Bottle Blowers</u>, 389

10  US at 472-73.   That process takes time.   Complainants like McCoy

11  should not be punished because of the "happenstance" that the

12  statutorily imposed procedure outlasts the term of the office they

13  sought.   Id at 474.   Second and more broadly, the LMRDA is not

14  "limited" to redressing individual complaints: "Congress

15  emphatically asserted a vital public interest in assuring free and

16  democratic union elections that transcends the narrower interest of

17  the complaining union member."   Id at 475.   Accordingly the court

18  will order a remedy in some form.

19    There are options besides ordering a rerun of the 2005

20  election, however.   <u>Glass Bottle Blowers</u>, even if expanded beyond

21  the justiciability context, did not address - and hence did not

22  rule out - intermediate alternatives.   At oral argument, the

23  Secretary stated that the government would accept an order to

24  supervise the union's next scheduled election rather than rerun the

25  old election.   There is some support for this alternative.   See

26  <u>Usery</u>, 538 F2d at 950-51; <u>Donovan v Local 10902, Comm'ns Workers of</u>

27  <u>Am</u>, 650 F2d 799, 802 (5th Cir 1981); see also <u>Dole v Local 512,</u>

28  <u>Intl Bhd of Teamsters, Chauffers, Warehousemen and Helpers of Am</u>,

730 F Supp 1562, 1568 (MD Fla 1990).  But see <u>Chao v Local 54,</u>
<u>Hotel Empl and Rest EIU</u>, 166 F Supp 2d 109, 125 & n23 (D NJ 2001)
(declining to wait until the next election because it was eight
months away).

        In <u>Usery</u>, the union's 1971 election was tainted by the
incumbents' campaign literature violations.  538 F2d at 948.  While
the case proceeded in federal court, the union held its next
triennial election, in 1974.  Id at 949.  To prevent problems, the
union decided to have the 1974 election supervised by the American
Arbitration Association, and the government conceded the fairness
of that election.  Id at 947.  During that election, two out of the
three incumbents lost.  Id at 949.  In 1976, the district court
found the 1971 election unlawful and ordered an immediate rerun of
the old election.  The Second Circuit rejected that remedy as
"arbitrary" and determined that the appropriate remedy was to
supervise the next regularly scheduled election, in 1977.  Id at
951.  The court held that four factors compelled the conclusion
that waiting until 1977 was more proper.

        First, the harm from the old violation had passed.  The
incumbents who benefitted from the illegal 1971 election were
almost all defeated in the 1974 election, and the violation
involved a single incident of improper conduct rather than a more
systematic violation such as improper voting requirements.

        Second, rerunning the old election would be more
expensive for the union members than supervising the next one.  One
district court in 1965 felt that was reason enough to wait until
the next election.  See <u>Wirtz v Local Union 169, Intl Hod Carriers,</u>
<u>Bldg & Common Laborers' Union of Am</u>, 246 F Supp 741, 754 (D Nev

1965).  Because the defendant holds yearly elections, including one

next month, rerunning the old election would produce two elections

in one year, which seems wasteful.  See <u>Donovan v CSEA Local Union</u>

<u>1000, Am Fed of State, Cty and Mun Empl</u>, 594 F Supp 188, 193-94

(NDNY 1984), rev'd on other grounds by 761 F2d 870 (2d Cir 1985).

Third, the union in <u>Usery</u> had planned a constitutional

convention in early 1977 and therefore "[i]f the election is held

prematurely, changes in the constitution may require a new

election" in 1977 anyway.  <u>Usery</u>, 538 F2d at 951.

Fourth, the district court had not yet ruled on a

different aspect of the 1971 election, and the Second Circuit

stated that "[i]t would be expensive and wasteful to require an

election under a rule which is now subject to challenge, and which

later may be resolved by judicial decision before a 1977 election."

Id at 952.

Here, the first two factors are most relevant.  Although

the record is unclear whether the winners of the 2005 election are

still in office, and although the violation was not an isolated

incident of illegal behavior, the harm from the violation appears

to have passed.  The union "has taken steps to amend its

Constitution" to include the book-clearing requirement (see Doc

#31), and the next election should satisfy the LMRDA.  Given the

role of the amendment in the upcoming election, focusing on the old

election would indeed be "arbitrary."  The union has only "taken

steps" to amend its constitution; it has not "amended" its

constitution.  Accordingly, the sensible outcome is to permit the

Secretary to ensure that the amendment passes and that the next

scheduled election adheres to that amendment.  If the amendment

1   does not pass, the Secretary can ensure that the union does not

2   impose the unwritten book-clearing requirement.  The cost savings

3   of that alternative also counsel in favor of waiting.

4          The irrelevance of the third and fourth factors cuts

5   against waiting, but only indirectly.  If <u>Usery</u> found four reasons

6   to wait, but there are only two reasons in the instant case to

7   wait, then one possible inference is that the justification for

8   waiting is not as strong here as in <u>Usery</u>.  <u>Usery</u> does not suggest

9   that reading, however, and because the union's possible

10  constitutional amendment cuts to the heart of this case,

11  supervising the next election is "lawful and practicable, in

12  conformity with the constitution and bylaws of the labor

13  organization."  29 USC § 482(c).

14         Accordingly, the Secretary of Labor's motion for summary

15  judgment is GRANTED and defendant's cross-motion for summary

16  judgment is DENIED.  The Secretary of Labor shall submit a proposed

17  form of judgment providing that she supervise the union's next

18  regularly scheduled election and such other relief as appropriate.

19

20         IT IS SO ORDERED.

21

22         _____

23         VAUGHN R WALKER

24         United States District Chief Judge

25

26

27

28